IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH GOODNER, Individually and as representative of the Estate of Matthew Goodner, and MARY YETMAR, Individually and as representative of the Estate of Matthew Goodner,<br>　　　　Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| v. | § | Civil Action No. 3:13-CV-4081-BH |
| ULTIMATE TOWER SERVICE INC.,<br>　　　　Defendant. | §<br>§<br>§ | Consent Case |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the consent of the parties and the order of transfer dated April 25, 2014, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. (doc. 26.) Before the Court is *Defendant Ultimate Tower Service, Inc.'s Motion for Summary Judgment and Brief in Support,* filed May 31, 2016 (doc. 63). Based on the relevant filings and applicable law, the motion is **DENIED**.

**I. BACKGROUND AND UNDISPUTED FACTS**

On October 9, 2013, Ralph Goodner and Mary Yetmar, individually and as representatives of the Estate of Matthew Goodner (collectively Plaintiffs), filed suit against Ultimate Tower Services, Inc. (Defendant) alleging negligence and gross negligence that resulted in fatal injuries to their son, Matthew Goodner. (doc. 1 at 5.)[1] The parties do not dispute that Plaintiffs are residents of Iowa, their son was a resident of Iowa, and Defendant is a corporate citizen of Texas. (*See* doc. 63 at 9 n. 1, 2, 4; doc. 64 at 4 (citing doc. 1), 19.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

On March 26, 2004, Defendant entered into a staff leasing agreement with AMS Staff Leasing (AMS). (doc. 64-2 at 47-51; doc. 72 at 26-30.) The agreement provided that AMS would furnish staffing for Defendant's regular business operations, process the payroll for the staffing it provided, pay all taxes on the labor furnished, and obtain Workers' Compensation and/or Employers Liability Insurance. (doc. 64-2 at 47; doc. 72 at 26.) Defendant agreed to provide all hiring paperwork. (*Id.*) AMS shared a right of direction and control over leased employees assigned to Defendant; a right to hire, fire, discipline and reassign leased employees; and right of direction and control over the adoption of employment and safety policies. (doc. 64-2 at 49; doc. 72 at 28.) It assumed responsibility for payment of wages to leased employees and collection and payment of payroll taxes. (*Id.*) Defendant retained full responsibility for direction and control of leased employees as necessary to conduct its business. (*Id.*)

AMS obtained a Workers Compensation and Employers Liability Insurance Policy from Dallas National Insurance Company or the period of June 20, 2011 to June 20, 2012. (*See* doc. 64 at 21-80; doc. 64-1; doc. 64-2 at 1-46.) The policy and its endorsements expressly listed only AMS as the insured. (*See* doc. 64 at 21; doc. 64-1 at 21, 25, 36-38, 41, 53, 63, 67-72, 77-80; doc. 64-2 at 1-2, 5, 8, 10, 12-13, 21, 24-25, 28-29, 42, 44.)

Plaintiff's son was working at VeraSun through a temporary agency called Manpower when he met the "tower people" around 2006, and he decided to go start climbing towers and traveling with them. (doc. 64-2 at 75-76, 80-81.) His mother is not sure if Manpower placed him with Defendant, but she thought Defendant asked him. (*Id.* at 76.) He was laid off from the tower business in 2010 and 2011. (*Id.* at 79-80.)

On June 9, 2011, Plaintiffs' son signed an employment application with AMS. (doc. 64 at

19; doc. 64-2 at 52; doc. 72 at 24.) The top of the application identified the "Client Company" as Defendant, and contained the notation "Re-hire." (*Id*.) On the application, he initialed a statement that he understood he would be an employee of AMS working for one of its clients. (doc. 64-2 at 52; doc. 72 at 24.) He also completed a federal Form I-9, Employment Eligibility Verification. (doc. 64-2 at 53; doc. 72 at 36.) The Form I-9 was signed by Suzanne Lee, Office Manager for Defendant. (*Id.*)

Plaintiffs' son fell to his death while working on a tower at Defendant's job site in Newton, Massachusetts, on October 12, 2011. (*See* doc. 64-2 at 54; doc. 72 at 32.) AMS' report of his death to the Iowa Industrial Commission listed AMS as the employer. (*Id.*) A letter from the Iowa Workforce Development to AMS' worker's compensation carrier concerning the death listed AMS as the employer. (*See* doc. 64-2 at 55; doc. 72 at 34.) AMS' worker's compensation carrier concluded that Plaintiffs' son "was a leased employee co-employed by AMS" and Defendant. (doc. 64 at 19.)

On May 31, 2016, Defendant moved for summary judgment. (doc. 63.) Plaintiffs filed a response, and Defendant filed a reply. (docs. 71, 76.) The motion is now ripe for consideration.

## II. RECONSIDERATION OF APPLICABLE LAW

Defendant moves for summary judgment on grounds that if a conflict of laws exists, the applicable law is the law of Iowa, or in the alternative, the law of Texas. (doc. 63 at 11-14.)

After Defendant filed its summary judgment motion, the Court ruled on Defendant's motion to dismiss and found that a conflict of laws exists, and that Iowa law applies to this case. (*See* doc. 69.) Despite its initial arguments in both of its dispositive motions that Iowa law applies, Defendant's reply seeks reconsideration of that finding, without explanation, and argues for the

3

application of Texas law. (*See* doc. 76 at 2.) Defendant's reply also argues that it is entitled to immunity under Iowa law. (*See id.*)[2]

As noted by the Fifth Circuit, the Federal Rules of Civil Procedure "do not recognize a 'motion for reconsideration' *in haec verba.*". *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 n. 14 (5th Cir.1994). Where a motion for reconsideration challenges a final judgment, it is treated either as a motion to alter or amend the judgment under Rule 59(e), or as a motion seeking relief from judgment under Rule 60(b). *Id.* Where a motion challenges an interlocutory order, it is considered under Rule 54(b). *Contango Operators, Inc. v. U.S.*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013).

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." A ruling should only be reconsidered where the moving party presents substantial reasons for requesting reconsideration. *Baustian v. Louisiana,* 929 F.Supp. 980, 981 (E.D. La.1996); *Louisiana v. Sprint Communications Co.*, 899 F.Supp. 282, 284 (M.D.La.1995). In determining a motion under Rule 54(b), some courts have looked to the standards of Rule 59(e),

---

[2] Defendant presented its argument that it is entitled to immunity under Iowa law for the first time in its reply brief. (doc. 76 at 2-3.) The purpose of filing a reply brief "is to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *See Springs Indus., Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991). A movant is not ordinarily permitted to make new arguments in a reply because this deprives the non-movant of a meaningful opportunity to respond. *See id.* Because Plaintiffs did not have a meaningful opportunity to respond to the new argument, it will not be considered. *Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03–CV–0330–G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) ("[A] court generally will not consider arguments raised for the first time in a reply brief."); *see, e.g., Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14–CV–3398–L, 2015 WL 5613336 (N.D. Tex. Aug. 25, 2015), *adopted by* No. 3:14–CV–3398–L, 2015 WL 5666727 (N.D. Tex. Sept. 24, 2015) (declining to consider new arguments made for the first time in a reply brief).

including whether reconsideration is necessary to correct manifest errors of law or fact, to present new evidence, to prevent manifest injustice, or because of an intervening change in law. *SGC Land, LLC v. Louisiana Mistream Gas Serv.*, 939 F. Supp. 2d 612 (W.D. La. 2013). Whether to grant a motion to reconsider rests within the discretion of the court. *Dos Santos v. Bell Helicopter Textron, Inc. Dist*, 651 F.Supp.2d 550, 553 (N.D.Tex. 2009).

Here, Defendant has articulated no basis, including any of the bases set out in Rule 59(e), for reconsideration of the previous findings in relation to its motion to dismiss that a conflict of laws exists, and that Iowa law applies in this case. It has not explained why reconsideration of a finding that it expressly requested in two dispositive motions is warranted. It merely relies on its arguments in its summary judgment motion, which are essentially identical to the arguments it made in its motion to dismiss and that have already been rejected. Defendant's motion for reconsideration is denied.

### III. MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on grounds that compensation through the Iowa Workers' Compensation Act is the Plaintiffs' exclusive remedy. (doc. 63 at 21-22.)

**A.     Legal Standard**

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court

of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.' " *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c) (1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.[3]

---

[3] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those]

**B.     Exclusive Remedy**

Under Iowa Code § 85.20(1), when an employer is insured for workers' compensation liability and benefits are recoverable, workers' compensation benefits are the exclusive remedy available to an employee against the employer for a work-related injury. *Subcliff v. Brandt Engineered Prods., Ltd.*, 459 F.Supp.2d 843, 850 (S.D. Iowa 2006) (citing *Meade v. Ries*, 642 N.W.2d 237, 242 (Iowa 2002)). "Section 85.20 provides a quid pro quo not for third parties, but for employers, who are required by law to carry workers' compensation insurance or become self-insured in order to be in a position to compensate their employees who are injured on the job." *Smith v. CRST Intern., Inc.*, 553 N.W.2d 890, 895 (Iowa 1996).

In the case of a general employer in the business of furnishing employees to others, the "'special employer'" to whom it furnishes employees can also be an employer for purposes of Iowa's workers' compensation scheme. *Subcliff*, 459 F.Supp.2d at 850 (citing *Swanson v. White Consol. Indus., Inc.*, 30 F.3d 971, 974-75 (8th Cir. 1994.)[4] Although "the presumption is that a general employer continues as the sole employer," the determination of whether a special employer is considered a co-employer covered by the Iowa Workers' Compensation Act's exclusive remedy provision focuses on the agreement between the special employer and the employee. *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d 891, 893-94 (Iowa 1994) (citing *Rouse v. State*, 369 N.W.2d 811, 814 (Iowa 1985)). "[T]here must be

> a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer

---

claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

[4] A special employer is "[a]n employer who has borrowed an employee for a limited period and has temporary responsibility for and control over the employee's work." *Special Employer*, BLACK'S LAW DICTIONARY (10th ed. 2014).

7

> and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented ... might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages. This reasoning applies not only to the question whether there is any employment relationship at all, but also to the question whether one of two or more persons is an employer. In such cases, with all the elements of employment having been established as to *some* employer, the issue may be solely whether the particular defendant made a contract with the particular employee.

*Id.* (quoting *Rouse,* 369 N.W.2d at 814).

The question of whether a special employer and an employee entered into "a contract of hire, express or implied . . . is ordinarily one of fact." *Parson*, 514 N.W.2d at 893 (citations omitted).

> This question of fact . . . is resolved by examining evidence relevant to [the employee's] and [the employer's] intent to enter into such a contract. . . . Such evidence may consist of documentary evidence, as well as the testimony of [the general employer and special employer] employees. The evidence must show not only that [the employer] agreed to enter into a contract for service, but also that [the employee] had an informed and deliberate intent to do so.

*Swanson*, 30 F.3d at 973 (citing *Parson*, 514 N.W.2d at 893, 895, 897); *see also Parson*, 514 N.W.2d at 894 (noting the requirement of " deliberate and informed consent" by the employee). The question becomes one of law only when there is but one inference that can reasonably be made from the facts. *Parson*, 514 N.W.2d at 893-94 (citing *Gigax v. Ralston Purina Co.*, 136 Cal.App.3d 591, 598-99, 186 Cal. Rptr. 395, 399 (1982)).

Here, to meet its initial summary judgment burden on the issue of whether it was Plaintiffs' son's employer, Defendant relies on the employment application and the I-9 form. (*See* doc. 63 at 18-19.) In his application for employment with AMS, Plaintiff's son expressly acknowledged his understanding that he would be an employee of AMS working for one of its clients, which was identified as Defendant. (doc. 64-2 at 52; doc. 72 at 24.) Contrary to its contention, Plaintiffs' son did not "expressly recognize" Defendant as his employer on the I-9 form; he merely verified his

8

eligibility to work based on his citizenship.  (*See* doc. 64-2 at 53.)  Defendant's office manager signed the form in the place for the "signature of employer or authorized representative" to verify his identification documents.  (*See id.*)  Under the leasing agreement between AMS and Defendant, Defendant had agreed to provide all hiring paperwork.  (doc. 64-2 at 47; doc. 72 at 26.)  Viewed in the light most favorable to the non-movant, these two documents do not demonstrate Plaintiffs' son's "informed and deliberate intent" to form an employment relationship with Defendant, nor Defendant's agreement to do so.

Defendant also relies on the deposition testimony of Plaintiff Mary Yetmar as evidence of the employment relationship.  (doc. 63 at 19.)  Her testimony appears to only describe her son's prior employment involving Defendant, which began in 2006 and ended when he was laid off in 2010 or 2011.  (doc. 64-2 at 75-76, 80-81.)  She was not sure if he had been placed with Defendant through a temporary agency, so her testimony is not sufficient to establish a prior employment relationship between her son and Defendant.  (*See id.*)  Even if it was, this testimony still does not demonstrate an "informed and deliberate intent" by her son to form an employment relationship with Defendant in 2011, when he submitted an employment application to AMS.

Finally, Defendant points to AMS' insurance carrier's determination that it was a "co-employer."  (*See* doc. 76 at 7-8; *see also* doc. 64 at 19.)  The carrier's determination of a co-employment relationship likewise does not demonstrate an "informed and deliberate intent" by Plaintiffs' son to form an employment relationship with Defendant, nor Defendant's agreement.

Defendant has not met its initial summary judgment burden to identify record evidence establishing as a matter of law that Plaintiffs' son was its employee.  Even assuming for purposes of this motion that it had, Plaintiffs have proffered or identified competent summary judgment

9

evidence in the record from which a reasonable jury could find that Plaintiffs' son was not an employee of Defendant. They point to his employment application with AMS, which expressly stated his understanding that he would be an employee of AMS working for one of its clients. (doc. 72 at 17 (citing doc. 64-2 at 52; doc. 72 at 24).) They also point to AMS' report of injury and the correspondence from Iowa Workforce Development, which both identified only AMS as the employer. (*Id.* at 18 (citing doc. 64-2 at 54-55).) This evidence is sufficient to create a genuine issue of material fact regarding whether there was a contract for hire between Defendant and Plaintiffs' son. Because of that genuine issue of material fact, Defendant has not established that it was a special employer covered by the Iowa Workers' Compensation Act's exclusive remedy provision.

## IV.  CONCLUSION

Defendant's motion for summary judgment is **DENIED**.

**SIGNED this 10th day of August, 2016.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE